21085

The STATE, Respondent, v. Lawrence ROPER and Raythum Johnson, Appellants.

(260 S. E. (2d) 705)

*George A. Anderson,* Aiken, and *William T. Toal,* of *Johnson, Toal & Battiste,* Columbia, *for appellants.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Brian P. Gibbes* and *Russell D. Ghent,* Columbia, and *Sol. Sylvia W. Westerdahl,* Aiken, *for respondent.*

November 14, 1979.

RHODES, Justice:

Appellants were convicted of armed robbery of a pawn shop and sentenced to terms of twenty-five years each. In this appeal they assert three trial errors. We affirm.

Based upon information from the pawn shop operator that the robbery was perpetrated by two black males, as well as a witness' description of the car used by the robbers to make their escape as a late model, green Thunderbird with a red and white license tag bearing the letters "MVB" or "MVF", the police were able, within a period of three hours, to locate an automobile occupied by two black males meet-

ing the description given in all material respects. The car was subsequently pulled over in a residential neighborhood, at which point appellants allegedly jumped from the car shouting profanities. They were thereupon arrested for disorderly conduct pursuant to section 16-17-530(b) of the South Carolina Code (1976) and taken to the county jail. Their car was subsequently taken to the county jail yard and an inventory search conducted without benefit of warrant, a previous superficial search of the car having been made at the scene of the arrest. As a result of these searches, a sum of money, various articles stolen from the pawn shop, and several guns were recovered. These instrumentalities and fruits of the crime were thereafter entered into evidence at trial over the objections of appellants.

Appellants assert that the evidence produced by the search was the product of an arrest made without probable cause. A police office has probable cause to arrest without a warrant where he, "in good faith, believes that a person is guilty of a felony, and his belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise . . .." *State v. Swilling,* 249 S. C. 541, 558, 155 S. E. (2d) 607, 617 (1967). In determining whether the evidence is sufficiently detailed to give rise to probable cause, all the evidence within the arresting officer's knowledge may be considered, including the details observed while responding to information received. *Draper v. United States,* 358 U. S. 307, 79 S. Ct. 329, 3 L. Ed. (2d) 327 (1959) ; *State v. Peters,* 271 S. C. 498, 248 S. E. (2d) 475 (1978). The factual situation in this case is similar to that of the *Peters* case. In that case an informant told a police officer that a yellow Grand Prix with a white top and South Carolina license tags bearing the digits "308" would be leaving the beach within a short period of time transporting a quantity of marijuana. This was held to be sufficient to constitute probable cause. *See also, State v. Gilbert,* 258 S. E. (2d) 890 (S. C. 1979). As the police had similarly detailed in-

formation in the case at bar, there was sufficient information to give rise to probable cause to stop the automobile.

Likewise there was sufficient knowledge on the part ■ of the officers to arrest appellants for disorderly conduct. Under section 16-17-530(b), any person who shall "use obscene or profane language on any highway or at any public place" is guilty of disorderly conduct. Appellants, upon the police's stopping them, immediately jumped from the car, shouting profanities. There was obviously probable cause to arrest for violation of the statute.

Appellants further contend, however, that the disorderly conduct statute is unconstitutionally overbroad under the First and Fourteenth Amendments. Because the statute is unconstitutional, the argument continues, the arrest was made without probable cause, thereby making the search of the car illegal since it was a search incident to an arrest. Even if it were assumed the statute is unconstitutional, it would not avail appellants. The United States Supreme Court has recently held in *Michigan v. DeFillippo*, —— U. S. ——, 99 S. Ct. 2627, 61 L. Ed. (2d) 343 (1979) that where an officer who arrested the defendants in that case had abundant probable cause to believe the defendant's conduct violated a presumptively valid city ordinance, the arrest of that defendant was lawful even though the ordinance was later declared unconstitutional. Since the arrest of the defendant was valid, the court found that the search of his person incident to the arrest was proper and evidence discovered during the search need not be suppressed.

Similarly, based upon the valid arrest in this instance, the search of the automobile incident to that arrest was proper. It is well settled that a follow-up search is sanctioned where the initial seizure of the automobile was based upon probable cause. *State v. Peters, supra.* As the search of appellants' car was legal, the motion to suppress was properly denied by the trial judge.

The next question raised by appellants involves the admissibility of certain impeachment testimony. While the victim of the crime was being cross-examined, defense counsel asked him a question concerning an alleged inconsistent answer made by him at the preliminary hearing. As soon as the question was asked and before an answer was given, the solicitor asked that defense counsel be required to "follow the rule".[1] The trial judge responded "Yes, Ma'm" to the suggestion of the solicitor. Defense counsel immediately proceeded to other areas of cross-examination, never directing any other questions to this issue. Despite the fact that the cross-examination of the victim on this issue never progressed beyond the point recited above, defense counsel thereafter called as his witness an attorney, who had been present at the preliminary hearing, for the purpose of his testifying that the victim's testimony at the preliminary hearing was inconsistent with that given at trial. This testimony was excluded by the trial judge on the ground that no foundation had been laid through cross-examination of the victim which would warrant his receiving the impeaching testimony offered.

The ruling of the trial judge was correct. Before evidence of a prior contradictory statement can be admitted, the witness who is alleged to have made the statement must be advised on cross-examination, "of the substance of the prior statement and the time when, the place where and the person to whom it was made." *State v. Galloway,* 263 S. C. 585, 591, 211 S. E. (2d) 885, 888 (1975). Further, if the witness on cross-examination admits that he has made such a statement, no testimony may be offered simply confirming such admission. *Elliott v. Black River Electric Cooperative,* 233 S. C. 233, 104 S. E. (2d) 357 (1958). In the abortive attempt to lay the foundation for impeachment, the witness was never afforded the

---

[1] The parties agree that the "rule" referred to is that pertaining to the requirement of laying a foundation for impeaching a prior inconsistent statement.

opportunity to either admit or deny having made the statement. The foundation for impeachment was clearly not laid.

While appellants have not taken specific exception to the circumstances recited above which interrupted the cross-examination of the victim, it should be pointed out that such an exception was waived in that no proffer of testimony was made. It is well settled that a reviewing court may not consider error alleged in exclusion of testimony unless the record on appeal shows fairly what the rejected testimony would have been. *State v. Cox,* 258 S. C. 114, 187 S. E. (2d) 525 (1972).

In the final question, the appellants contend that the trial court coerced a juror into agreeing with the guilty verdict of the remaining jurors. After a guilty verdict was published, the jury was polled at the instance of appellants and one juror answered in the negative. Questioning of the juror by the court elicited information to the effect that while she had voted for the published guilty verdict, she now had her doubts. The trial judge then advised the jury collectively that the verdict must be unanimous and had them retire to the jury room. The jury returned to the court room after approximately thirty minutes with a verdict of guilty, which was confirmed by individual polling.

Where a juror indicates merely some degree of reluctance or reservation about the verdict, the course of action depends largely upon the discretion of the trial judge. 25 A. L. R. (3d) 1149. Where a juror's equivocal, ambiguous, inconsistent, or evasive answers leave doubt whether he has assented to the verdict, but his answers are not such as to indicate involuntariness or coercion, it is generally held that a subsequent answer which indicates clear and unequivocal assent, either on further interrogation or after further deliberation, will cure the defect. 76 Am. Jur. (2d), Trial, § 1127.

The thrust of appellant's argument is that the questions propounded to the juror by the court had the effect of emphasizing her minority position and the

fact that she had changed her mind. We have carefully reviewed the questions asked by the court, and we are unable to read into them the prejudicial inferences suggested by appellants. Since the juror equivocated in some of her answers, it was necessary that the court ask follow-up questions in order that the record accurately reflect the position of the juror. The manner in which this was accomplished was both courteous and expeditious. There was no coercion of the juror by the court.

For the foregoing reasons, the judgment of the lower court is affirmed.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.